## Commonwealth v. Kyle

*Irvin Graybill, Jr.*, District Attorney, for Commonwealth.

*Horace W. Vought*, for Supervisors of Chapman Township.

*Seth McCormick Lynn*, of *Furst, McCormick, Muir, Lynn & Reeder*, for defendant.

SHOWERS, P. J., December 1, 1960.—This is an appeal from a summary proceeding before a justice of the peace in Chapman Township, Snyder County, in which defendant was charged with violating section 903 of The Vehicle Code, 75 PS §453.[1] This section

---

[1] Since the date of the alleged violation was prior to the effective date of The Vehicle Code of 1959, the case was decided under The Vehicle Code of May 1, 1929, P. L. 905, and section numbers of Purdon's referred to herein are the section numbers for the 1929 Code.

of the code makes it unlawful to operate a commercial vehicle carrying a load in excess of the gross weight provided therein for various classes of vehicles. A hearing was held, and the case was then argued before the court en banc. From the testimony, it appears that defendant was travelling north on U. S. Routes 11 and 15, operating a lowboy tractor-trailer loaded with a power shovel for which his employer had secured a "Special Hauling Permit" from the Secretary of Highways under section 905 of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §455. Defendant admits that he was traveling in a northerly direction from York to New Milford and that he was hauling the shovel for which the special permit had been issued as set forth above.

The prosecutor, State Trooper Webster, testified that he was travelling in a southerly direction and passed defendant, who was travelling in the opposite direction, at a point approximately two miles south of the Borough of Liverpool; that he made a U-turn and proceeded to the scale house below Liverpool located in Buffalo Township, where he waved defendant to approach the stationary scales; that the officer, being unable to weigh the equipment in the method that he desired, directed defendant to the stationary scales in the Borough of Liverpool, Perry County. The permit from the Department of Highways gave permission to defendant to haul a total weight of 139,000 pounds. Upon arrival at the scales in Liverpool, it was determined by the officer that these scales would not weigh the equipment being transported by defendant. The scales located in the Borough of Liverpool were approximately 1.8 miles north from the point where the officer brought defendant's equipment to the first stop to be weighed at the stationary scales in Buffalo Township, Perry County. The officer then directed defendant to drive to the scales in Chapman Township,

a distance of more than seven and one-half miles, and testified as follows:

"Q. Then what did you do?

"A. I told the driver I was going to proceed north up to the next scale. *I believe* I said something to the effect, I advised him I couldn't order him to go to the next scale because it was over the two mile limit.

"Q. How far from the second scale to the third?

"A. Better than 7½ miles.

"Q. Where is the third scale located?

"A. Chapman Township, Snyder County."

Upon arrival at Chapman Township, Snyder County, the officer again attempted to weigh the alleged overweight vehicle operated by defendant, and finally did weigh the same in the manner in which it could have been weighed at the scales either in Buffalo Township, Perry County, or in the Borough of Liverpool, Perry County. Instead of doing this, the officer directed defendant to proceed a distance of approximately nine miles from the first scales to the scales located at Liverpool, and later to the scales in Chapman Township, Snyder County. The officer's testimony, on page 12, is as follows:

"Q. So it is correct, is it not, that you could have by weighing each of the back two axles of the trailer, you could have by using that method, weigh the combination at either one of the first two weigh stations you stopped?

"A. Yes sir.

"Q. Why didn't you weigh them that way that time?

"A. I was trying to determine as close as possible, the most accurate weight".

Defendant denies that the officer stated to him that he couldn't compel him to drive beyond the two-mile limit for the purpose of weighing his equipment, but,

on the contrary, states that he was directed by the officer to go to the second and third set of scales referred to in this action, located in the Borough of Liverpool and in Chapman Township, Snyder County. His testmony follows:

"Q. What did you do?

"A. I followed him to the next scales. We weighed the front axles, we weighed the tandem axles and then tried to weigh the back axles but couldn't weigh them.

"Q. What did Trooper Webster say?

"A. Well, he made a phone call there.

"Q. Do you know who he called?

"A. No, I don't.

"Q. After he made the phone call, what did he say to you?

"A. Well, to determine the weight we would go on to the next set of scales.

"Q. Now, at the third set of scales, what procedure was followed?

"A. We weighed the front axles of the truck, we weighed the tandem axles and we pulled the trailer wheels on but it would not weigh the trailer wheels. So then he gets the idea of weighing the wheels separately, each wheel, the trailer wheels separate; so he said to back 8 wheels off and let 8 wheels on the scales. I said, 'How can you get the actual weight that way?' He said, 'We can get it close enough.'"

Again on cross-examination, defendant denied that he voluntarily proceeded to the third set of scales in Snyder County. See testimony as follows:

"Q. At the second scale, before you proceeded to the third scale, what did the officer say to you?

"A. He said to get the actual weight of it, or a more accurate weight, we will go to the next set of scales.

"Q. Did he say 'we will go', or what did he say?

"A. That is what he said.

"Q. He said, quote—to get an accurate weight we will go to the next set of scales?

"A. That's right.

"Q. That is exactly what he said?

"A. Yes.

"Q. Did he tell you to go to the next scales?

"A. Well, he said, we will go to the next scales. He went up the road and I followed him.

"Q. Did he say he did not have any jurisdiction to order you to follow him?

"A. No, he didn't say anything like that.

"Q. Didn't he say he couldn't order you to go more than two miles?

"A. No.

The questions submitted for our consideration in this case are as follows:

1. Was the equipment properly weighed and was the overweight correctly established?

2. Was the prosecution properly brought?

This case presents a novel question and one in which no authorities have been cited, nor have we been able to find, by a careful research of the law, a parallel situation.

We will take up for our consideration question number 2, relating to the question of jurisdiction. This is not, in our opinion, a case where there were no scales available. In fact, there were too many scales available, and the prosecutor concluded that he had the right to direct defendant to any number of scales along the route defendant was travelling, in order to weigh the alleged overweight equipment, notwithstanding an express legislative enactment directing the officer what procedure to take in cases of this character. Sections 903 and 905 must be given reasonable construction consistent with the general purpose of the statute. The language of section 905 is compre-

hensive; it authorizes exceptions to the overweight section 903 in specific instances and under circumstances which are set out with particularity. Section 905(a) authorizes the Secretary of Highways to issue a special permit "authorizing the applicant to operate or move either a vehicle or combination of vehicles, or a vehicle and load, or a combination of vehicles and their load or loads, of a size or weight exceeding the maximum specified in this act . . ." Further, section 905(a) states that "Every such permit shall be issued for a single trip, and shall designate the route to be travelled . . ."

The manifest intention of the legislature in prescribing certain maximum weights which may be lawfully carried upon the highways of this Commonwealth was to protect the highways from premature erosion and destruction. If, therefore, any truck was apprehended suspected of being overweight, notwithstanding the fact that it had a special hauling permit, and in violation of The Vehicle Code under section 6 of the Act of June 30, 1955, P. L. 225, 75 PS §454 (now 75 PS §904), it must be weighed at a weighing station within two miles of the place of apprehension, or if none be available within such distance, it must be weighed by a portable scales brought to the scene of the alleged violation. Under this provision there is no authority conferred upon the officer to exercise discretion in determining which scales he will use to weigh defendant's equipment. It is our considered opinion that the section of the act, above outlined, is directory and not mandatory. The officer, as we understand the act, can do either one of two things, weigh defendant's equipment on a portable scales or direct defendant to operate his equipment not more than two miles distant from the point where he was stopped to the nearest stationary scales, if such scales

are within a distance of two miles from where he stopped defendant.

Counsel for the Commonwealth in his argument called to our attention the case of Commonwealth v. Walker, 71 D. & C. 279, as authority for the officer in the instant case to have weighed defendant's equipment in Chapman Township, Snyder County, and file an information there. We have reviewed carefully the opinion in the Walker case and find that it is not analogous to the factual situation in the instant case. It does not appear, from a careful reading of the Walker case, that the officer directed defendant to operate his equipment for the purpose of weighing same at a distance greater than the two-mile limit as set forth in the Act of Assembly. The officer in the instant case was stationed at the stationary scales in Buffalo Township, Perry County, where he waved defendant to stop at that point. The officer could have at this point weighed defendant's equipment in the same manner he used at the scales in Chapman Township, Snyder County, but, instead, he directed defendant to move his equipment to the Liverpool scales and later to Snyder County. It is our understanding that there is no legislative authorization for an officer to direct the operator of an alleged overweight vehicle to a number of different scales in order to weigh the vehicle as he would like to do. Therefore, the arrest in our opinion was at the scales in Buffalo Township, which left the officer to follow the directive in connection with arrests on view. The Act of May 1, 1929, P. L. 905, art. 9, sec. 903, as amended, in addition to making it unlawful to operate a commercial vehicle on any highway with the gross weight in excess of that provided for the various types of vehicles therein described, specifically provides for the enforcement of this section by peace officers in uni-

form, giving them power to arrest on view for the violation of any of the provisions of this section.

Although two questions have been ·submitted for our consideration, we believe the case can be disposed of on the question of jurisdiction. The arrest does not of itself· constitute the commencement of a judicial proceeding. It is necessary after having arrested the accused, that the arresting officer file an information. Such informations "Shall be brought before the nearest available magistrate within the city, borough, incorporated town, or township, in the county where the alleged violation occurred . . .": Act of May 1, 1929, P. L. 905, art. 12, sec. 1201, as amended, 75 PS §731. These provisions are mandatory and jurisdiction depends upon their observance: Commonwealth v. Gill, 166 Pa. Superior Ct. 223. The real issue is: What is it that The Vehicle Code requires the arresting officer to do? It is our understanding that the arresting officer can arrest defendant and weigh his equipment at the point where he was stopped by a portable and/or stationary scales if available at the point where defendant was stopped, or direct defendant to move his equipment to stationary scales in the event the stationary scales are within a radius of two miles from the point where defendant was stopped. Section 904 of The Vehicle Code provides as follows: "Any peace officer who shall be in uniform, and shall exhibit his badge or other sign of authority, having reason to believe that the gross weight of a vehicle or tractor, or combination thereof, or the weight upon any axle or pair of axles thereof is unlawful, is authorized to weigh the same either by means of a portable or stationary scales, or may require that such vehicle or tractor, or combination thereof, be driven to the nearest stationary scales in the event such scales are within a' distance of two miles" from the point where defendant is stopped. In the instant

case, the officer was without legislative authorization to direct defendant to operate his equipment to the scales in Liverpool, since there were stationary scales at the exact point where the officer stopped defendant. In the case before the court, it was mandatory upon the officer to file an information before the nearest available magistrate in Buffalo Township, Perry County, where the alleged violation occurred. The officer, as previously stated, was without authority to direct defendant to the scales in Liverpool or in Chapman Township, Snyder County, and the Justice of the Peace in Snyder County under the circumstances as presented here, did not have jurisdiction to hear and determine the issue presented before him for disposition.

There is no appellate authority directly in point with the facts as presented in this case. In the event there would have been no scales in Buffalo Township, Perry County, where the officer first brought defendant to a stop, and the officer would have directed defendant to drive to the stationary scales in the Borough of Liverpool, the case then would be identical with the facts set forth in the case of Commonwealth v. Walker, supra, and would be a continuing offense, since the distance defendant was directed by the officer to drive was within the distance set forth by legislative enactment.

Previous to the present provisions of The Vehicle Code, the information could have been filed before any justice within the county wherein the violation occurred. The purpose of the later legislation, as has been well said by Justice McBride of the Supreme Court in the case of Commonwealth v. Muth, 397 Pa. 106, 107, is to delimit the authority of the peace officer to take persons arrested on view for summary offenses to any committing magistrate in the county, and to make it mandatory that he take the person

so arrested to "the nearest available magistrate in the city, borough, incorporated town, or township, wherein the alleged offense occurred," and that he should file an information "Before the nearest available magistrate within the city, borough, incorporated town, or township, in the County wherein the alleged violation occurred." These venue provisions were inserted for the purpose of limiting discretion on the part of the arresting officer for the purpose of preventing oppression. They were designed to prevent officers from harassing motorists who violate the code by taking them before magistrates in a distant part of the county, and also to prevent an improper alliance between the magistrate and officer in the prosecution of violations.

Ordinarily, the place where the arrest is made on view and the place where the alleged offense occurred are the same. In the instant case, the officer apprehends defendant at a point where the stationary scales are located and where he has an opportunity to weigh the equipment of defendant for the offense committed, at the location where defendant was stopped; but, instead, the officer ignores entirely the mandatory provisions of taking defendant before the nearest available justice in Buffalo Township, Perry County, and directs that he move his equipment to another stationary scales in the Borough of Liverpool, a distance of 1.8 miles removed from the place where the offense was committed, and thereafter from Perry County through Juniata County and into Chapman Township, Snyder County, a distance of nine miles. He ignored, through inadvertence, the just claim of Buffalo Township, Perry County, to adjudicate this proceeding.

In the case of Commonwealth v. Muth, 397 Pa. 106, at 112, Justice McBride states as follows:

"The case is not free of difficulty where, as here, we are dealing with a continuing offense. What does 'nearest available' mean? Nearest available to what? There must be some point from which to judge. In the case of a continuing offense as many as a dozen different justices might be the 'nearest available' if the officer is permitted to select any point along the journey as being the point of reference. It would defeat the whole purpose of the legislation and introduce confusion if we were to accept such a view of the situation. That would permit a peace officer to follow an overloaded truck for many miles and then make the arrest at any place he names as the place where the violation occurred. It is his duty to make the arrest as soon as it reasonably may be made and thus prevent further violation. There is an order of primacy in such matters and it is the jurisdiction in which the offender is arrested which has first call upon him. Obviously the legislature ordained that at the earliest time consistent with the circumstances of the case the offender be delivered from executive authority into judicial authority so that there be no arbitrary interference with his right to a hearing or the furnishing of bail."

The authority conferred upon State policemen under the Act of May 1, 1929, P. L. 905, art. 12, sec. 1211, as amended, 75 PS §741, to arrest on view, as done here, applies only to ". . . any person violating any of the provisions of this Act . . ." Thus it would appear that an offense for which the arrest on view is made must be the one which is being committed at the time the arrest is made; that it is for this offense that jurisdiction of the person accused then attaches.

The arrest was made at the point where the officer stopped defendant at the scales in Buffalo Township and directed him to drive his vehicle upon the scales for the purpose of weighing the alleged overweight

piece of equipment. It was not within the discretion of the officer to direct defendant to scales at another location than those in Buffalo Township, Perry County, where he stopped defendant. The intent of the legislature, in our opinion, was to prevent the movement of overweight vehicles upon the highway. We believe this was an unjust and unauthorized act on the part of the officer, and that there is no authority for the officer to direct defendant to drive elsewhere, continuing to violate the laws as defendant moves along the highway with an alleged overweight vehicle; but that he should have immediately filed an information in Buffalo Township, Perry County, before the nearest available justice, in order to facilitate the entry of bail or waiver of hearing, as the case may be. We, therefore, hold that, under the circumstances in this case, the magistrate in Chapman Township, Snyder County, did not have jurisdiction and accordingly make the following:

### Order

And now, December 1, 1960, the court, after carefully weighing the testimony and arguments submitted by counsel, finds defendant, Lester F. Kyle, not guilty, for want of jurisdiction by the magistrate of Chapman Township, Snyder County.